BELCHER v AETNA CASUALTY & SURETY COMPANY

HAMILTON v AETNA CASUALTY & SURETY COMPANY

SHAFFER v RIVERSIDE INSURANCE COMPANY

Docket Nos. 61683, 62024, 61741. Argued October 2, 1979 (Calendar Nos. 3-5).—Decided June 30, 1980.

Marie Belcher claimed no-fault insurance survivors' benefits from the Assigned Claims Facility for the death of her son, Stacy Belcher, who died in a single-car accident while he was driving his automobile without valid insurance. The claim was assigned to Aetna Casualty and Surety Company, which denied it. Plaintiff Belcher brought an action for payment of the survivors' benefits against defendant Aetna Casualty, and the Wayne Circuit Court, Verne C. Boewe, J., granted summary judgment for the defendant on the ground that the plaintiff's claim was derivative and, if the plaintiff's son had lived, he could not have collected no-fault insurance benefits. The Court of Appeals, D. C. Riley, P.J., and Cynar, J. (T. M. Burns, J., dissenting), affirmed (Docket No. 77-3931). Plaintiff Belcher appeals.

Ida Rose Hamilton and her four minor children claimed no-fault insurance survivors' benefits from the Assigned Claims Facility because of the death of her husband, Rufus Hamilton, when his uninsured vehicle struck a utility pole. The claim was assigned to Aetna Casualty and Surety Company and was denied by Aetna. Mrs. Hamilton and the children brought an action against Aetna to compel payment of the benefits, and the Wayne Circuit Court, John R. Kirwan, J., granted summary judgment for the defendant on the ground that the plaintiffs did not have a cause of action under the no-fault insurance act. The Court of Appeals, N. J. Kaufman and Bashara, JJ. (T. M.

---

REFERENCES FOR POINTS IN HEADNOTES

[1, 4, 6] 7 Am Jur 2d (Rev), Automobile Insurance §§ 354-356, 358 et seq.

Validity and construction of "no-fault" automobile insurance plans. 42 ALR3d 229.

[2, 3, 5, 7] 7 Am Jur 2d (Rev), Automobile Insurance § 363.

Burns, P.J., dissenting), affirmed in an unpublished per curiam opinion (Docket No. 77-2190). Plaintiffs Hamilton appeal.

Ralph Shaffer died when his uninsured vehicle, which he was operating, collided with a vehicle owned and operated by Robert Gustafson, which was insured by Riverside Insurance Company. A wrongful death claim by the decedent's estate against Gustafson was settled by the parties, and Riverside Insurance Company paid the policy amount to the administrator of the estate. Lily D. Shaffer, the decedent's widow, then claimed no-fault insurance survivors' benefits from Riverside Insurance Company, which denied her claim. Mrs. Shaffer brought an action against Riverside to compel payment of the benefits, and the Marquette Circuit Court, Edward A. Quinnell, J., granted summary judgment for the defendant on the grounds that Mr. Shaffer would not have been entitled to benefits had he survived because of his failure to insure his own vehicle, and that Mrs. Shaffer's claim was based on her husband's remedy. The Court of Appeals, V. J. Brennan, P.J., and R. B. Burns and M. J. Kelly, JJ., affirmed in an unpublished per curiam opinion (Docket No. 77-4334). Plaintiff Shaffer appeals. In a unanimous opinion by Justice Moody, the Supreme Court *held:*

1. The threshold question in these cases is whether the injury upon which the claim is based is one for which the no-fault insurance act is designed to compensate. The nature of the injury and the circumstances under which it was suffered dictate whether no-fault insurance may provide a source of recovery for losses flowing from the injury. Personal protection insurance applies to an injury which is accidental, is a bodily injury (including death resulting from the injury), and arises out of the ownership, operation, maintenance or use of a motor vehicle. The injuries in these cases satisfy the statutory criteria, but payment of the personal protection insurance benefits is subject to other provisions of the no-fault insurance act.

2. Personal protection insurance benefits are payable only to injured persons or their surviving dependents. The no-fault insurance act creates a conclusive presumption that certain persons are dependents of a deceased injured party, and where the presumption does not operate, dependency is determined on the facts at the time of the decedent's death. The statute does not provide compensation for all economic losses suffered as a result of an injury in an automobile accident. The amount of the benefits is defined by the economic loss of the recipient. For example, the injured person has suffered losses from his inability to work, and from medical expenses and replacement services; surviving dependents have suffered loss of the decedent's

support and services. The differences in the benefits available to injured persons and to surviving dependents do not warrant a conclusion that a survivor's right to benefits is completely separate from the right of the injured person to claim benefits had he survived. The survivor's claim to benefits depends specifically upon the death of the injured person. The benefits for loss of support may fairly be regarded as a partial substitute for work-loss benefits which would have been payable to the injured person. The Legislature could have fairly contemplated that in most instances an injured person would use a portion of his benefits to support his dependents; the survivors' loss of support would not accrue until after the injured person's death.

3. The survivors in *Belcher* and *Hamilton* seek benefits through the Assigned Claims Facility, which are available only where no personal protection insurance is applicable to the injury. In all three cases the decedent owned and was operating an uninsured vehicle when the injury occurred; therefore, no insurance was applicable to the injury under the act, and personal protection insurance benefits may be obtained through an assigned claims plan unless the claimant is excluded by the no-fault act. The claimants argue that their entitlement is distinct from the decedent's entitlement to benefits had he survived. Nowhere in the no-fault insurance act are survivors given an express entitlement to claim benefits from any particular insurance source, but the Legislature clearly intended that the surviving dependents recover certain losses. To effectuate this intent and to provide the survivors with a source of recovery, it is necessary to infer that where an injured person may recover benefits from a specific insurer, his surviving dependents have the same right of recovery for their losses. In this way, a survivor's entitlement to benefits may be said to be derivative of or dependent on the decedent's entitlement to benefits had he survived. The plaintiffs concede that the injured persons, had they survived, would not have been entitled to be paid personal protection insurance benefits because they owned the uninsured motor vehicles involved in the accidents. They argue, however, that only the "person" described as the disqualified owner of the uninsured vehicle should be excluded. The term "person" is not used consistently in the no-fault insurance act, but it is apparent that it must be construed in its context. An examination of other terms used in the provision concerning disqualification for personal protection insurance benefits shows that it must be read to apply to survivors' loss benefits as well. The construction of the statute advocated

by the plaintiffs leads to anomalous results. Certain uninsured injured persons would not be entitled to claim personal insurance benefits; however, if such a person dies from his injuries, his dependents would be able to recover benefits for their losses resulting from the accident. Since survivors' benefits are at least a partial substitute for the benefits which are paid to an injured person who survives with dependents, the result advocated by the plaintiffs would not be consonant with the structure of the no-fault insurance act.

4. The no-fault insurance act makes the insurance compulsory, in part to ensure that all persons injured in most automobile accidents have a source of recovery for at least part of their economic losses. Under the first-party system, recovery of all allowable losses, including survivors' loss, generally comes from one's own insurer. Owners and registrants of motor vehicles in Michigan are expected to contribute to the fund from which no-fault benefits are payable. The Legislature has decided to exclude the payment of no-fault benefits where the injury upon which the claim is based is suffered by a person whose uninsured vehicle is involved in the accident. The statute excludes payment of survivors' benefits in these cases as well.

The decisions of the Court of Appeals are affirmed.

83 Mich App 207; 268 NW2d 349 (1978) affirmed.

1. INSURANCE — NO-FAULT INSURANCE — PERSONAL PROTECTION INSURANCE BENEFITS.

Determining that an injury is one of the kind for which no-fault personal protection insurance benefits are payable does not end the inquiry whether a claimant is entitled to payment because the act operates to compensate only a limited class of persons, injured persons or their surviving dependents, for economic losses sustained as a result of motor vehicle accidents; furthermore, the no-fault insurance act does not provide compensation for all economic losses suffered as a result of the injury (MCL 500.3101 et seq.; MSA 24.13101 et seq.).

2. INSURANCE — NO-FAULT INSURANCE — SURVIVORS' BENEFITS.

No-fault insurance survivors' benefits may fairly be regarded as a partial substitute for work-loss benefits which would have been payable to the injured person during his lifetime; therefore, while differences exist in the benefits payable to injured persons and to surviving dependents, they do not warrant a conclusion that a survivor's right to benefits is completely separate from the right of the injured person to claim benefits

had he survived (MCL 500.3107, 500.3108; MSA 24.13107, 24.13108).

3. INSURANCE — NO-FAULT INSURANCE — SURVIVORS' BENEFITS.

Surviving dependents of a person injured as the result of an automobile accident are entitled to claim personal protection insurance benefits for survivors' loss where the statutory requirements as to the nature of the injury are met and the survivors qualify as dependents under the no-fault insurance act unless they are otherwise excluded or the act provides no source of recovery (MCL 500.3105, 500.3108, 500.3110; MSA 24.13105, 24.13108, 24.13110).

4. INSURANCE — NO-FAULT INSURANCE — PERSONAL PROTECTION INSURANCE BENEFITS — ASSIGNED CLAIMS PLAN.

It must be determined under the terms of the no-fault insurance act that no personal protection insurance is applicable to the injury before recovery of benefits may be obtained through an assigned claims plan; in most cases, where an injured person or a family member is insured under a no-fault insurance policy, the injured person seeks benefits from his own insurer, and in other cases which insurer is liable depends on the relation between the injured person and the motor vehicles involved in the accident (MCL 500.3114, 500.3115, 500.3172; MSA 24.13114, 24.13115, 24.13172).

5. INSURANCE — NO-FAULT INSURANCE — SURVIVORS' BENEFITS — STATUTES — CONSTRUCTION.

The no-fault insurance act does not give to surviving dependents of an injured person an express entitlement to claim benefits from any particular insurance, but the Legislature clearly intended that the surviving dependents recover certain losses; to effectuate this intent and to provide the survivors with a source of recovery, it is necessary to infer from the statute that where an injured person may recover benefits from a specific insurer his surviving dependents have the same right of recovery for their losses (MCL 500.3112, 500.3114, 500.3115; MSA 24.13112, 24.13114, 24.13115).

6. INSURANCE — NO-FAULT INSURANCE — WORDS AND PHRASES — PERSON — STATUTES — CONSTRUCTION.

The term "person" is not used consistently throughout the no-fault insurance act; it therefore must be construed in the pertinent context to ascertain its precise meaning (MCL 500.3101 *et seq.;* MSA 24.13101 *et seq.).*

7. INSURANCE — NO-FAULT INSURANCE — SURVIVORS' BENEFITS —
   DISQUALIFICATION — UNINSURED MOTORISTS.
   Surviving dependents of a decedent may not recover no-fault
   personal protection insurance benefits for survivors' loss where
   the claim arises out of a motor vehicle accident in which the
   decedent was driving his own uninsured motor vehicle (MCL
   500.3108, 500.3113[b]; MSA 24.13108, 24.13113[b]).

*Rosenbaum, Bloom, Appel & Moses* for plaintiff Belcher.

*Richard A. Lenter* for plaintiffs Hamilton.

*Bridges & Collins* (by *Brian D. Sheridan)* for plaintiff Shaffer.

*Collins & Einhorn, P.C.,* for defendant Aetna Casualty and Surety Company.

*William R. Smith* for defendant Riverside Insurance Company.

BLAIR MOODY, JR., J. These appeals, consolidated for the purpose of argument and decision, present the following issue for resolution:

"[A]re no-fault insurance benefits to be paid to the surviving dependent(s) of a deceased uninsured motorist?" 405 Mich 826-827 (1979).

We hold that in all three cases the surviving dependents are not entitled to be paid no-fault benefits. The decisions of the Court of Appeals are therefore affirmed.

FACTS

*Belcher*
Marie Belcher is the mother of Stacy Belcher, now deceased. On August 21, 1976, Stacy Belcher

was involved in a motor vehicle accident and suffered injuries resulting in his death. No other vehicles were involved in the collision. At the time of the accident, Stacy Belcher was operating a vehicle owned by and registered to him. The security required by MCL 500.3101(1); MSA 24.13101(1)[1] for the vehicle was not in effect when the accident occurred.[2]

Marie Belcher made application to the Assigned Claims Facility of the Michigan Department of State[3] for no-fault survivors' benefits. The application was forwarded to appellee Aetna Casualty and

[1] MCL 500.3101(1); MSA 24.13101(1) provides:

"The owner or registrant of a motor vehicle required to be registered in this state shall maintain security for payment of benefits under personal protection insurance, property protection insurance, and residual liability insurance. Security shall be in effect continuously during the period of registration of the motor vehicle."

[2] Mrs. Belcher offered the following explanation for her son's uninsured status:

"On July 16, 1976, a forged certificate of no-fault insurance was issued to Stacy Allen Belcher listing Progressive Insurance Company, Policy No. BPRO-5960 as the insurance company and was purportedly signed by James Schmitt. In reliance upon said certificate of insurance, deceased registered and operated his vehicle.

"On August 21, 1976, Stacy Belcher was involved in a one car automobile accident which resulted in his death. Not realizing at the time that the aforesaid certificate of insurance was a forgery, plaintiff, Marie Belcher, mother of the decedent, Stacy Belcher, filed a claim for survivor's benefits with Progressive Insurance Company. In the course of investigating the aforesaid claim, the forgery was discovered and an investigation commenced by the Michigan Commissioner of Insurance." Memorandum in Support of Plaintiff's Opposition to Defendant's Motion for Summary Judgment, p 2.

[3] The Assigned Claims Facility was organized by the Michigan Secretary of State pursuant to MCL 500.3171; MSA 24.13171 which provides:

"The secretary of state shall organize and maintain an assigned claims facility and plan. A self-insurer and insurer writing insurance as provided by this chapter in this state shall participate in the assigned claims plan. Costs incurred in the operation of the facility and the plan shall be allocated fairly among insurers and self-insurers. The secretary of state shall promulgate rules to implement the facility and plan in accordance with and subject to Act No. 306 of the Public Acts of 1969, as amended, being sections 24.201 to 24.315 of the Compiled Laws of 1948."

Surety Company (hereinafter Aetna) for investigation and handling. Following denial of her claim by Aetna, Mrs. Belcher instituted suit, as the surviving dependent of her son, to recover no-fault survivors' benefits.[4] An order granting Aetna's motion for summary judgment was entered on September 23, 1977.[5] The Court of Appeals (with one member of the panel dissenting) affirmed the decision of the trial court. 83 Mich App 207; 268 NW2d 349 (1978). Leave to appeal was granted by this Court on February 6, 1979. 405 Mich 826.

*Hamilton*

Appellants are the widow and minor children of Rufus Hamilton. Rufus Hamilton died of injuries sustained when the vehicle he was operating struck a utility pole. At the time of the accident, the security required by MCL 500.3101(1); MSA 24.13101(1) was not in effect as to this vehicle which was owned by and registered to Rufus Hamilton.

Mrs. Hamilton made application to the Assigned Claims Facility for no-fault survivors' benefits for herself and the minor children. The claim, which was referred to appellee Aetna, was eventually denied by the company.

Mrs. Hamilton instituted suit to compel pay-

[4] In her complaint, Mrs. Belcher alleges she was a dependent of her son at the time of his death. As this case involves review of a grant of summary judgment based on GCR 1963, 117.2(1), all well-pleaded allegations in the complaint are accepted as true.

Since Mrs. Belcher is not within the class of persons conclusively presumed to be dependent under MCL 500.3110(1); MSA 24.13110(1), she would eventually have to establish her dependency in accordance with MCL 500.3110(2); MSA 24.13110(2) to perfect her claim for survivors' benefits.

[5] The order of summary judgment does not specify which subsection of GCR 1963, 117.2 authorized the grant of summary judgment. Presumably, the order is based upon GCR 1963, 117.2(1), the ground for relief asserted in Aetna's motion for summary judgment.

ment of such benefits. An order granting Aetna's motion for summary judgment was entered May 26, 1977, on the ground that plaintiff's complaint failed to state a valid claim for relief. GCR 1963, 117.2(1). In an unpublished per curiam opinion dated August 23, 1978, the Court of Appeals (with one member of the panel dissenting) affirmed the trial court's decision, adopting the rationale of the Court of Appeals majority in *Belcher, supra.* This Court granted appellant's application for leave to appeal on February 6, 1979. 405 Mich 827.

*Shaffer*

Lily Shaffer is the widow of Ralph Shaffer. Ralph Shaffer died instantaneously of injuries suffered when the vehicle he owned and was operating collided with a second vehicle, owned and operated by Robert Gustafson. The requisite security was not in effect as to Mr. Shaffer's vehicle at the time of the accident. The other vehicle involved in the collision was insured under a no-fault policy issued by appellee Riverside Insurance Company (hereinafter Riverside).

Mrs. Shaffer, as widow and surviving dependent of Ralph Shaffer, applied to Riverside for payment of no-fault survivors' benefits.[6] Following a denial of her claim, Mrs. Shaffer brought suit to recover such benefits from Riverside. An order granting summary judgment in favor of the insurer, pursuant to GCR 1963, 117.2(1), was entered on October 21, 1977. In an unpublished per curiam opinion dated June 22, 1978, the Court of Appeals affirmed the trial court's order. Leave to appeal was granted by this Court on February 6, 1979. 405 Mich 827.

---

[6] In the agreed statement of facts filed by the parties, it is indicated that a wrongful death claim advanced by Mr. Shaffer's estate against Robert Gustafson was settled without litigation.

I

Enactment of the Michigan no-fault insurance act[7] signalled a major departure from prior methods of obtaining reparation for injuries suffered in motor vehicle accidents. The Legislature modified the prior tort-based system of reparation by creating a comprehensive scheme of compensation designed to provide sure and speedy recovery of certain economic losses resulting from motor vehicle accidents. Under this system, losses are recovered without regard to the injured person's fault or negligence. MCL 500.3105(2); MSA 24.13105(2). The act contemplates that in a majority of cases, specific recognized losses suffered as a result of motor vehicle accidents will be compensated for by a person's own insurer. MCL 500.3114(1); MSA 24.13114(1).

Owners and registrants of motor vehicles required to be registered in Michigan must maintain security for payment of benefits under personal protection insurance,[8] property protection insurance[9] and residual liability insurance.[10] MCL 500.3101(1); MSA 24.13101(1). The Legislature has thus designated owners and registrants of such vehicles as the group responsible for contributing to the insurance scheme from which no-fault benefits are payable. To ensure that this segment of the driving public obtain the requisite security the Legislature enacted the following measures:

(1) Owners and registrants of a motor vehicle for which security is required to be in effect who operate the vehicle without insurance are deemed

---

[7] 1972 PA 294.

[8] MCL 500.3105, 500.3107, 500.3108; MSA 24.13105, 24.13107, 24.13108.

[9] MCL 500.3121; MSA 24.13121.

[10] MCL 500.3131; MSA 24.13131.

guilty of a misdemeanor. MCL 500.3102(2); MSA 24.13102(2).

(2) Other persons who operate a motor vehicle with knowledge that the owner or registrant of the vehicle has not obtained the requisite security are deemed guilty of a misdemeanor. MCL 500.3102(2); MSA 24.13102(2).

(3) Persons required to maintain security and who fail to do so have no immunity from tort liability. Such persons are exposed to potential liability for all damages to which an injured victim may be entitled. MCL 500.3135; MSA 24.13135.

(4) An insurer who is obliged to pay personal protection insurance benefits may be able to recover the amounts paid from owners and registrants of uninsured motor vehicles or from their estates. MCL 500.3177; MSA 24.13177.

(5) The act excludes the payment of personal protection insurance benefits under certain circumstances. MCL 500.3113; MSA 24.13113.[11]

The instant cases present the question of whether MCL 500.3113(b); MSA 24.13113(b) operates to exclude the payment of personal protection insurance survivors' benefits to the surviving dependents of an owner of an uninsured vehicle who is injured and dies of injuries sustained in a motor

---

[11] MCL 500.3113; MSA 24.13113 provides as follows:

"A person is not entitled to be paid personal protection insurance benefits for accidental bodily injury if at the time of the accident any of the following circumstances existed:

"(a) The person was using a motor vehicle which he had taken unlawfully, unless he reasonably believed that he was entitled to take and use the vehicle.

"(b) The person was the owner or registrant of a motor vehicle involved in the accident with respect to which the security required by subsections (3) and (4) of section 3101 was not in effect.

"(c) The person was not a resident of this state, was an occupant of a motor vehicle not registered in this state and was not insured by an insurer which has filed a certification in compliance with section 3163."

vehicle accident when the uninsured vehicle was involved in the accident. A review of the act as a whole leads us to conclude that § 3113(b), as drafted, indicates that the Legislature intended to exclude the payment of benefits to these survivors.

## II

The threshold question to be resolved where a person makes a claim for no-fault benefits is whether the injury upon which the claim is based is the type of injury which the act is designed to compensate. Focus must be placed upon the injury. The nature of the injury and the circumstances under which it was suffered dictate whether no-fault insurance may operate as a source of recovery for losses flowing from the injury.

In cases where payment of benefits under personal protection insurance is sought, MCL 500.3105(1); MSA 24.13105(1) provides:

"Under personal protection insurance an insurer is liable to pay benefits for accidental bodily injury arising out of the ownership, operation, maintenance or use of a motor vehicle as a motor vehicle, subject to the provisions of this chapter."

Under § 3105(1), personal protection insurance is deemed to apply to an injury where the injury satisfies the following criteria: The injury must be accidental as defined in MCL 500.3105(4); MSA 24.13105(4).[12] The injury must be a bodily injury.

___

[12] MCL 500.3105(4); MSA 24.13105(4) defines accidental bodily injury as follows:

"Bodily injury is accidental as to a person claiming personal protection insurance benefits unless suffered intentionally by the injured person or caused intentionally by the claimant. Even though a person knows that bodily injury is substantially certain to be caused by his act or omission, he does not cause or suffer injury intentionally if he acts or refrains from acting for the purpose of averting injury to property or to any person including himself."

Bodily injury includes death which results from the injury. MCL 500.3105(3); MSA 24.13105(3).[13] Finally, the accidental bodily injury must arise out of the ownership, operation, maintenance or use of a motor vehicle.[14]

The circumstances present in each of the instant cases satisfy the criteria necessary to support the conclusion that accidental bodily injury arose from the operation of a motor vehicle. In each case death resulted from accidental injuries sustained during the operation of a motor vehicle. However, determining that an injury is of a type for which personal protection insurance benefits are payable does not, in any practical sense, end the inquiry. The concluding phrase of § 3105(1) states "subject to the provisions of this chapter." In order to resolve the questions of what types of losses are compensated, what persons are entitled to be compensated and what insurers are liable to pay benefits for such losses, reference to other sections of the act is necessary.

### III

The act operates to compensate only a limited class of persons for economic losses sustained as a result of motor vehicle accidents. Under personal protection insurance, benefits are made payable only to injured persons or surviving dependents of

---

[13] MCL 500.3105(3); MSA 24.13105(3) provides:

"Bodily injury includes death resulting therefrom and damage to or loss of a person's prosthetic devices in connection with the injury."

[14] Motor vehicle is defined in MCL 500.3101(2); MSA 24.13101(2) as follows:

" 'Motor vehicle' as used in this chapter, except for section 3103, means a vehicle, including a trailer, operated or designed for operation upon a public highway by power other than muscular power which has more than 2 wheels, but does not include a moped as defined in section 32b of Act No. 300 of the Public Acts of 1949, being section 257.32b of the Michigan Compiled Laws."

the injured person. MCL 500.3112; MSA 24.13112 provides in part:

"Personal protection insurance benefits are payable to or for the benefit of an injured person or, in case of his death, to or for the benefit of his dependents."

An injured person is defined in MCL 500.3109(2); MSA 24.13109(2) as a natural person suffering accidental bodily injury.[15] The term dependent is nowhere specifically defined in the act. However, MCL 500.3108; MSA 24.13108, which defines a survivor's loss, indicates that a dependent is a person who was receiving support and services from the deceased injured person prior to his death. A conclusive presumption that certain persons are dependents of the deceased injured party is created by MCL 500.3110; MSA 24.13110. Under this section, in cases where the presumption does not operate, dependency is determined according to the facts existing at the time of death.[16]

---

[15] MCL 500.3109(2); MSA 24.13109(2) provides:

"An injured person is a natural person suffering accidental bodily injury."

[16] MCL 500.3110; MSA 24.13110 provides:

"(1) The following persons are conclusively presumed to be dependents of a deceased person:

"(a) A wife is dependent on a husband with whom she lives at the time of his death.

"(b) A husband is dependent on a wife with whom he lives at the time of her death.

"(c) A child while under the age of 18 years, or over that age but physically or mentally incapacitated from earning, is dependent on the parent with whom he lives or from whom he receives support regularly at the time of the death of the parent.

"(2) In all other cases, questions of dependency and the extent of dependency shall be determined in accordance with the facts as they exist at the time of death.

"(3) The dependency of a surviving spouse terminates upon death or remarriage. The dependency of any other person terminates upon the death of the person and continues only so long as the person is under the age of 18 years, physically or mentally incapacitated from earning, or engaged full time in a formal program of academic or vocational education or training.

Furthermore, the act is not designed to provide compensation for all economic losses suffered as a result of an automobile accident injury. Under personal protection insurance, the act recognizes certain losses suffered by the injured person and seeks, to a limited extent, to compensate for them. MCL 500.3107; MSA 24.13107 makes personal protection insurance benefits payable for the injured person's losses which include expense of medical care and services, funeral and burial expense, work loss and replacement service loss. Dollar and time limitations are placed upon the amount of benefits payable for such losses. Section 3107 defines an injured person's recoverable loss as follows:

"(a) Allowable expenses consisting of all reasonable charges incurred for reasonably necessary products, services and accommodations for an injured person's care, recovery or rehabilitation. Allowable expenses within personal protection insurance coverage shall not include charges for a hospital room in excess of a reasonable and customary charge for semiprivate accommodations except when the injured person requires special or intensive care, or charges for funeral and burial expenses in excess of $1,000.00.

"(b) Work loss consisting of loss of income from work an injured person would have performed during the first 3 years after the date of the accident if he had not been injured and expenses not exceeding $20.00 per day, reasonably incurred in obtaining ordinary and necessary services in lieu of those that, if he had not been injured, an injured person would have performed during the first 3 years after the date of the accident, not for income but for the benefit of himself or of his dependent. Work loss does not include any loss after the date on which the injured person dies. Because the

"(4) Personal protection insurance benefits payable for accidental bodily injury accrue not when the injury occurs but as the allowable expense, work loss or survivors' loss is incurred."

benefits received from personal protection insurance for loss of income are not taxable income, the benefits payable for such loss of income shall be reduced 15% unless the claimant presents to the insurer in support of his claim reasonable proof of a lower value of the income tax advantage in his case, in which case the lower value shall apply. The benefits payable for work loss sustained in a single 30-day period and the income earned by an injured person for work during the same period together shall not exceed $1,000.00, which maximum shall apply pro rata to any lesser period of work loss. The maximum shall be adjusted annually to reflect changes in the cost of living under rules prescribed by the commissioner but any change in the maximum shall apply only to benefits arising out of accidents occurring subsequent to the date of change in the maximum."

The act also recognizes economic losses suffered by the surviving dependents of a deceased injured person and seeks to a limited extent to recompense them for their losses. MCL 500.3108; MSA 24.13108 makes personal protection insurance benefits payable for survivors' loss. Survivors' loss includes a dependent's loss of the deceased's support and services. Such loss is defined in MCL 500.3108(1); MSA 24.13108(1) as:

"[A] survivor's loss which consists of a loss, after the date on which the deceased died, of *contributions of tangible things of economic value, not including services, that dependents* of the deceased at the time of the deceased's death *would have received for support during their dependency from the deceased* if the deceased had not suffered the accidental bodily injury causing death and *expenses * * * reasonably incurred by these dependents* during their dependency and *after the date on which the deceased died in obtaining ordinary and necessary services in lieu of those that the deceased would have performed for their benefit* if the deceased had not suffered the injury causing death." (Emphasis added.)[17]

---

[17] MCL 500.3108; MSA 24.13108 was amended by 1978 PA 459. At the time the injuries were sustained in all three cases § 3108 provided as follows:

Appellants have pointed to the differences in benefits payable under § 3107 and § 3108 in support of their argument that a survivor's entitlement to benefits is completely separate and distinct from, and nondependent upon, the entitlement to benefits of the injured person had he lived. We cannot completely agree with appellants' proposition.

A review of these sections does reveal certain designed differences. Personal protection insurance benefits are payable to two separate recipient categories: an "injured person" or "his dependents". MCL 500.3112; MSA 24.13112. An injured person is eligible to receive benefits payable under § 3107. Surviving dependents are eligible to receive benefits payable under § 3108.[18] Further, the recipient of benefits paid under either § 3107 or § 3108 is recognized as the person who suffered the economic loss for which the benefit compensates. An injured person is considered to have suffered economic losses such as work loss, medical expense loss and replacement service loss. Surviving dependents are deemed to have suffered economic losses

"Personal protection insurance benefits are payable for a survivors' loss which consists of a loss, after the date on which the deceased died, of contributions of tangible things of economic value, not including services, that dependents of the deceased at the time of his death would have received for support during their dependency from the deceased if he had not suffered the accidental bodily injury causing death and expenses, not exceeding $20.00 per day, reasonably incurred by these dependents during their dependency and after the date on which the deceased died in obtaining ordinary and necessary services in lieu of those that the deceased would have performed for their benefit if he had not suffered the injury causing death. The benefits payable for survivors' loss in connection with the death of a person in a single 30-day period shall not exceed $1,000.00 and is not payable beyond the first 3 years after the date of the accident."

[18] In addition to receiving benefits under § 3108, surviving dependents also receive benefits normally paid to the injured person in situations where such benefits accrued to the injured person but were not paid prior to his death. See MCL 500.3112(a); MSA 24.13112(a).

such as loss of the deceased's support and services.[19]

Another difference exists in that the losses suffered by each group commence and end at different times. An injured person's work loss does not accrue after his death whereas a surviving dependent's losses do not begin to accrue until after the injured person's death. Finally, benefits payable for economic losses suffered by an injured person cannot be equated in all respects with benefits payable for survivors' losses. For example, benefits paid to an injured person for loss of income do not in all circumstances equal benefits paid to surviving dependents for loss of support which the deceased had provided to his or her dependents.

While these differences exist, they do not form a basis for concluding that a survivor's right to benefits is completely separate and distinct from, and nondependent on, the right of an injured person to claim benefits had he survived. As well as revealing certain differences, a review of § 3107 and § 3108 discloses that statutory connections exist between the losses compensated for under these sections and the persons suffering such losses.

Under either § 3107 or § 3108 benefits are payable only where an accidental bodily injury has occurred as described in § 3105. Further, before a claim for survivors' benefits under § 3108 may be made, the injury must have resulted in death. Thus, a survivor's claim to benefits depends in part upon the occurrence of a specific type of injury to another person, the deceased.

---

[19] See also MCL 500.3116(2); MSA 24.13116(2) which provides in part:
"A recovery by an injured person or his or her estate for loss suffered by the person shall not be subtracted in calculating benefits due a dependent after the death and a recovery by a dependent for loss suffered by the dependent after the death shall not be subtracted in calculating benefits due the injured person."

In addition, persons who are potential recipients of survivors' benefits must have had a certain relationship with the injured person prior to his death. Benefits for survivors' loss are payable only where the deceased had contributed things of tangible economic value to the dependent's support or where the deceased had performed services for his dependents during the injured person's lifetime.

As we have seen, benefits paid for loss of work-related income cannot always be equated with benefits paid for loss of support. In some cases, an injured person would not have contributed all of his work-related income to the support of his dependents. In other cases, dependents may have received amounts for support which exceeded the amount of an injured person's work-related income.

However, survivors' benefits paid for loss of support may fairly be regarded as a partial substitute for work-loss benefits which were or would have been paid to the injured person during his lifetime. A survivor's loss of support does not accrue until after the injured person's death. Prior to the injured person's death, any loss of support a dependent suffers as a result of the injury is neither recognized nor expressly compensated for by the act. Rather, benefits are paid to the injured person for loss of work-related income. The Legislature could have fairly contemplated that in most instances the injured person would use a portion of his work-loss benefit to provide support for his dependents. Benefits paid for a survivor's loss of support can thus be regarded as a close substitute for funds likely to have been received out of the work-loss benefit which would have been paid to the injured person had he survived.

In sum, § 3107 and § 3108 set forth the nature

and extent of losses for which personal protection insurance benefits are payable. These sections further identify categories of persons eligible to claim benefits for their losses.

Section 3108, standing alone, cannot be construed to entitle surviving dependents to recovery of no-fault benefits in all circumstances. However, if the threshold requirements as to the nature of the injury are met as set forth in § 3105(1), and if survivors' loss has been suffered by persons considered to be surviving dependents under § 3108 and § 3110, then the survivors are entitled to claim benefits under the act unless excluded or unless the act provides no source of recovery.

IV

In all three cases the lower courts concluded, based upon differing theories, that since the deceased injured person would not have been entitled to claim benefits had he lived, his surviving dependents were likewise not entitled to claim benefits from any source. In *Belcher* and *Hamilton,* the Court of Appeals held that MCL 500.3113(b); MSA 24.13113(b) excluded survivors from entitlement to claim benefits from the Assigned Claims Fund. In *Shaffer,* the Court of Appeals reasoned that the deceased injured party, had he survived, could not have received benefits from the insurer of the other vehicle involved in the collision under MCL 500.3114; MSA 24.13114 or under MCL 500.3115; MSA 24.13115. The Court concluded that the widow of the deceased injured party also could not claim benefits from defendant Riverside under § 3114 or § 3115.

The *Belcher* and *Hamilton* cases involve injuries resulting from single-vehicle accidents where the injured person was operating an uninsured vehicle

owned by and registered to him. The survivors in these cases seek payment of survivors' loss benefits from the Assigned Claims Facility. MCL 500.3172; MSA 24.13172 provides:

"A person entitled to claim because of accidental bodily injury arising out of the * * * operation * * * of a motor vehicle * * * may obtain personal protection insurance benefits through an assigned claims plan *if no personal protection insurance is applicable to the injury.*" (Emphasis added.)

In these cases, before recovery of benefits may be obtained through an assigned claims plan, it must be determined that no personal protection insurance is "applicable to the injury". The only sections of the act which indicate whether a specific insurance source is obligated to pay benefits on account of an injury are § 3114 and § 3115. Therefore, a review of these sections must be made to determine whether any personal protection insurance is applicable to the injury.

Section 3114[20] and § 3115[21] constitute both enti-

---

[20] MCL 500.3114; MSA 24.13114 provides in its entirety as follows:

"(1) Except as provided in subsections (2) and (3), a personal protection insurance policy applies to accidental bodily injury to the person named in the policy, his spouse, and a relative of either domiciled in the same household. When personal protection insurance benefits are payable to or for the benefit of an injured person under his own policy and would also be payable under the policy of his spouse, relative, or relative's spouse, the injured person's insurer shall pay all of the benefits and shall not be entitled to recoupment from the other insurer.

"(2) A person suffering accidental bodily injury while an operator or a passenger of a motor vehicle operated in the business of transporting passengers shall receive the personal protection insurance benefits to which the person is entitled from the insurer of the motor vehicle. This subsection shall not apply to a passenger in the following, unless that passenger is not entitled to personal protection insurance benefits under any other policy:

"(a) A school bus, as defined by the department of education, providing transportation not prohibited by law.

"(b) A bus operated by a common carrier of passengers certified by the public service commission.

tlement provisions and priority provisions in certain respects. They are entitlement provisions in the sense that they are the only sections where persons are given the right to claim personal protection insurance benefits from a specific insurer.[22] They are priority provisions in that they define the circumstances in which a particular insurance source is liable to provide personal protection insurance benefits. In most situations, where an injured person is insured or where an injured person's family member is insured under a

---

"(c) A bus operating under a government sponsored transportation program.

"(d) A bus operated by or providing service to a nonprofit organization.

"(e) A taxicab insured as prescribed in section 3101 or 3102.

"(3) An employee, his spouse, or a relative of either domiciled in the same household, who suffers accidental bodily injury while an occupant of a motor vehicle owned or registered by the employer shall receive personal protection insurance benefits to which the employee is entitled from the insurer of the furnished vehicle.

"(4) Except as provided in subsections (1) to (3), a person suffering accidental bodily injury while an occupant of a motor vehicle shall claim personal protection insurance benefits from insurers in the following order of priority:

"(a) The insurer of the owner or registrant of the vehicle occupied.

"(b) The insurer of the operator of the vehicle occupied."

[21] MCL 500.3115; MSA 24.13115 provides:

"(1) Except as provided in subsection (1) of section 3114, a person suffering accidental bodily injury while not an occupant of a motor vehicle shall claim personal protection insurance benefits from insurers in the following order of priority:

"(a) Insurers of owners or registrants of motor vehicles involved in the accident.

"(b) Insurers of operators of motor vehicles involved in the accident.

"(2) When 2 or more insurers are in the same order of priority to provide personal protection insurance benefits an insurer paying benefits due is entitled to partial recoupment from the other insurers in the same order of priority, together with a reasonable amount of partial recoupment of the expense of processing the claim, in order to accomplish equitable distribution of the loss among such insurers.

"(3) A limit upon the amount of personal protection insurance benefits available because of accidental bodily injury to 1 person arising from 1 motor vehicle accident shall be determined without regard to the number of policies applicable to the accident."

[22] See also *Underhill v Safeco Ins Co*, 407 Mich 175, 190, fn 10; 284 NW2d 463 (1979).

no-fault insurance policy, the injured person seeks benefits from his own insurer. MCL 500.3114(1); MSA 24.13114(1); *Underhill v Safeco Ins Co,* 407 Mich 175, 191; 284 NW2d 463 (1979). In situations where § 3114(1) does not operate, the determination as to which insurer, if any, is liable to pay personal protection insurance benefits is made by considering the circumstances in which the injury occurred.[23] In these instances, the relationship between the injured person and motor vehicles involved in the accident determines which insurance source is liable for the payment of benefits.

In all three of the instant cases, since the deceased injured person was not insured nor were any of his family members insured under a no-fault insurance policy, § 3114(1) does not apply. Rather, § 3114(4) applies because the deceased injured persons were occupants of motor vehicles at the time their injuries were suffered.[24] Under § 3114(4) personal protection insurance benefits may be recovered from insurers of owners or operators of the occupied vehicle. Since the deceased injured persons owned the vehicles they were operating at the time of the accident and because the occupied vehicles were uninsured, there is no insurance from which recovery may be

[23] Compare *Mathis v Interstate Motor Freight System,* 408 Mich 164, 184-186; 289 NW2d 708 (1980), for analysis of a situation where § 3114(1) does not operate. Recovery of benefits from the insurer designated in § 3114(3) rather than the injured person's own insurer was held proper.

[24] In *Shaffer,* the surviving widow contends, *inter alia,* that she may claim benefits from the insurer of the other vehicle involved in the collision under the provisions of § 3115(1). This section provides that where § 3114(1) does not operate to afford benefits, an injured person who is a non-occupant of a motor vehicle may claim benefits from insurers of owners or operators of vehicles involved in the accident. Mr. Shaffer, the deceased injured person, was an occupant of a vehicle involved in the accident. Mrs. Shaffer, as a survivor, may not qualify as a "person suffering accidental bodily injury while not an occupant of a motor vehicle" within the meaning of § 3115(1).

had under § 3114(4). There being no insurance applicable to the injury, personal protection insurance benefits may be obtained through an assigned claims plan unless the claimant is excluded by the act from seeking benefits.

V

Appellants have argued that their entitlement to benefits arises separately and is distinct from the deceased injured person's entitlement to benefits had he survived. We cannot agree. Nowhere in the act are survivors given an express entitlement to claim benefits from any particular insurance source. Section 3114 and § 3115 are the only provisions where a right to claim benefits from a specific insurer is set forth. Read literally, these sections would permit only the injured person to collect benefits from designated insurers.[25] Such a construction would, of course, lead to an anomalous result. Although a survivor's loss is recognized

---

[25] For example, § 3114(1) provides in part:

"[A] personal protection insurance policy applies to *accidental bodily injury to the person named in the policy.*" (Emphasis added.)

Section 3114(2) provides in part:

"A *person suffering accidental bodily injury* while an operator or a passenger of a motor vehicle operated in the business of transporting passengers *shall receive * * * personal protection insurance benefits.*" (Emphasis added.)

Section 3114(3) states in pertinent part:

"An employee, his spouse, or a relative of either domiciled in the same household, *who suffers accidental bodily injury * * * shall receive personal protection insurance benefits.*" (Emphasis added.)

Section 3114(4) provides in part:

"[A] *person suffering accidental bodily injury* while an occupant of a motor vehicle *shall claim personal protection insurance benefits.*" (Emphasis added.)

Section 3115(1), which applies to injuries to non-occupants, is similarly phrased.

A person suffering "accidental bodily injury" necessarily refers to an injured person. An injured person is defined in § 3109(2) as "a natural person suffering accidental bodily injury".

by the act in § 3108 and benefits are made payable to surviving dependents under § 3112, no claim for survivors' benefits could be enforced against any specific insurer.[26]

The Legislature clearly intended that surviving dependents recover certain losses in the event the injured person dies from his injuries. To effectuate this intent and to provide survivors with a source of recovery, it is necessary to infer from the language of § 3114 and § 3115 that where an injured person is given the right to recover benefits from a specific insurer, his surviving dependents have the same right of recovery for their losses.[27] In this way, a survivor's entitlement to benefits may be said to be derivative of or dependent upon the deceased injured person's entitlement to benefits had he survived.

Thus, the crucial question presented in all three cases is whether MCL 500.3113(b); MSA 24.13113(b) operates to exclude these survivors from claiming personal protection insurance benefits from any source.[28]

[26] Under such a literal construction another equally undesirable result would involve allowing all survivors to claim benefits under an assigned claims plan since no insurance would be applicable to pay benefits under § 3114 or § 3115. This result would be especially absurd in cases where the deceased injured party was insured under a no-fault policy. The act contemplates that benefits will usually be paid by the injured person's own insurer for all recoverable losses resulting from the injury.

[27] Thus, phrases used throughout § 3114 and § 3115 such as "a person suffering accidental bodily injury" "shall claim" or "shall receive" should be construed to mean "a person suffering accidental bodily injury *or his or her survivors*" "shall claim" or "shall receive" personal protection insurance benefits. This construction is further supported in that the definition of bodily injury includes death. MCL 500.3105(3); MSA 24.13105(3).

[28] If persons are excluded from claiming benefits under § 3113, no benefits may be recovered through an assigned claims plan. MCL 500.3173; MSA 24.13173 provides:

"A person who because of a limitation or exclusion in sections 3105 to 3116 is disqualified from receiving personal protection insurance

MCL 500.3113(b); MSA 24.13113(b) provides:

"A person is not entitled to be paid personal protection insurance benefits for accidental bodily injury if at the time of the accident any of the following circumstances existed:

\* \* \*

"(b) The person was the owner or registrant of a motor vehicle involved in the accident with respect to which the security required by subsections (3) and (4) of section 3101 was not in effect."[29]

Appellants concede that had the deceased injured persons survived their injuries, the injured persons in all three cases would have been disqualified from seeking benefits by virtue of § 3113(b). In the *Belcher* and *Hamilton* cases, had the deceased injured person survived, he would not have qualified for benefits under an assigned claims plan. MCL 500.3173; MSA 24.13173. In the *Shaffer* case, had the deceased injured person survived, he could not have qualified to receive benefits from appellee Riverside because of the § 3113(b) exclusion. Further, no benefits could have been obtained through an assigned claims plan in *Shaffer* by virtue of MCL 500.3173; MSA 24.13173.

The survivors contend, however, that under a

---

benefits under a policy otherwise applying to his accidental bodily injury is also disqualified from receiving benefits under the assigned claims plan."

[29] The "circumstances" described in subsection (a) and (c) of § 3113 where personal protection insurance benefits may not be recovered involve situations where:

"(a) The person was using a motor vehicle which he had taken unlawfully, unless he reasonably believed that he was entitled to take and use the vehicle.

\* \* \*

"(c) The person was not a resident of this state, was an occupant of a motor vehicle not registered in this state and was not insured by an insurer which has filed a certification in compliance with section 3163."

proper construction of § 3113(b), only the person described in subsection (b) of § 3113 should be excluded, namely, an owner or registrant of an uninsured vehicle involved in the accident who sustains accidental bodily injuries. This contention must fail for several reasons.

Appellants contend that the term "person", used both in the introductory clause of § 3113 and in subsection (b), should be narrowly construed to include only the individual injured person within its meaning. In subsection (b) it is clear that the term "person" refers to an individual who was the owner or registrant of an uninsured vehicle involved in the accident. In subsection (b) the term "person" also refers to an owner or registrant of such a vehicle involved in the accident who suffers accidental bodily injury. This construction necessarily follows since a survivor cannot suffer accidental bodily injury but merely suffers economic loss as a result of such an injury.

The meaning of the term "person" as it is used in the introductory clause is not so clear. The term "person" is not used consistently throughout the act. For example, an "injured person" is defined in § 3109(2) as a person suffering accidental bodily injury. The term "injured person" is used in § 3107 and § 3107a in describing benefits payable to a person who survives his injuries. Section 3108, in describing benefits payable for survivors' loss, uses the term "dependents". Yet, under § 3110(1), certain "persons" are conclusively presumed to be dependents. Under § 3114 and § 3115 the term "person suffering accidental bodily injury" must be construed to include persons who are survivors in order to give survivors a source of recovery for their losses. In subsection (b) of § 3113 the term "person" means an injured person who owns an

uninsured vehicle involved in the accident. A "person" is guilty of a misdemeanor if he operates a motor vehicle with knowledge that the owner or registrant has failed to insure it under § 3102(2). The examples are myriad. It is apparent that the term "person" must be construed in the exact context in which it is used to ascertain its precise meaning. The meaning of the term "person" as used in the introductory clause of § 3113 becomes clear following an examination of other key terms used in the clause.[30]

"Personal protection insurance benefits" is another key phrase used in § 3113's introductory clause. This term is nowhere expressly defined in the act. However, a review of the act indicates that personal protection insurance benefits are payable for losses defined in § 3107 and § 3108. Benefits payable for survivors' loss under § 3108 are merely one form of "personal protection insurance benefits" and are therefore included within this term.[31]

The introductory clause of § 3113 further states:

"A person is not entitled to be paid personal protection insurance benefits *for accidental bodily injury.*" (Emphasis added.)

Benefits are payable only where an accidental

---

[30] The Legislature could have expressed a clearer intent to limit the operation of § 3113 to exclude only injured persons who owned uninsured vehicles involved in the accident by substituting the phrase "injured person" in place of the word "person" in § 3113. The introductory clause would then have read: "An injured person is not entitled to be paid personal protection insurance benefits".

[31] The Legislature could have more clearly indicated its intent not to bar recovery of survivors' loss benefits under § 3113(b) by substituting the phrase "personal protection insurance benefits payable for § 3107 losses" in place of "personal protection insurance benefits". The introductory clause of § 3113 would then have read in part: "An injured person is not entitled to be paid personal protection insurance benefits payable for § 3107 losses".

bodily injury has occurred. MCL 500.3105; MSA 24.13105. Accidental bodily injury includes death resulting therefrom. MCL 500.3105(3); MSA 24.13105(3). Personal protection insurance benefits are paid to an injured person where he survives his accidental bodily injury. Benefits are paid to survivors for accidental bodily injury where death results.

It thus follows that the introductory clause of § 3113 must be read as: "A person is not entitled to be paid [survivors' loss] benefits for [death] if at the time of the accident any of the following circumstances existed."

This construction is buttressed by the fact that subsection (b) of § 3113 constitutes one of three "circumstances" where personal protection insurance benefits are not payable. In § 3114, subds (2) through (4), and § 3115(1) the source of recovery for an injured person's benefits or survivors' benefits is determined by the "circumstances" in which the injury occurred. The circumstances are defined by the relationship between the person suffering bodily injury and vehicles involved in the accident. Section 3113(b) similarly describes situations where benefits are *not* payable with reference to the circumstances in which the injury was suffered.

Furthermore, the construction of § 3113(b) advocated by these survivors leads to anomalous results. Persons who own vehicles, operate them without the compulsory insurance,[32] and are injured in motor vehicle accidents, would not be

---

[32] We intimate no opinion on the issue of whether benefits are recoverable in situations where a certificate of insurance which is in force at the time of the accident is later determined to be "invalid" (*e.g.,* a forgery). This situation was alluded to in the *Belcher* case. However, the question was not preserved for appellate review since it was never properly placed at issue in the trial court.

entitled to claim benefits for losses flowing from the accident. However, if such a person dies from his injuries, his dependents would be able to recover benefits for losses resulting from the accident. Since benefits paid for survivors' loss can be considered at least a partial substitute for benefits paid or payable to an injured person who survives, such a result does not seem consonant with the structure of the act.[33]

Insurance is made compulsory under the act, in part, to ensure that all persons injured in most automobile accidents have a source of recovery for at least a portion of their economic losses. Under the first-party system, recovery of all allowable losses, including survivors' loss, generally is sought from one's own insurer. Owners and registrants of motor vehicles required to be registered in Michigan are expected to contribute to the fund out of which no-fault benefits are payable.

Section 3113(b) represents a policy decision by the Legislature to exclude the payment of no-fault benefits in situations where the injury upon which the claim to benefits is based is suffered by a

---

[33] Appellants have contended that MCL 500.3177; MSA 24.13177 indicates a legislative intent that survivors of an uninsured motorist are entitled to collect benefits in the circumstances presented by the instant cases. We disagree. Section 3177 provides in relevant part:

"*An insurer obligated to pay personal protection insurance benefits for accidental bodily injury* to a person occupying an uninsured motor vehicle or *to the spouse or relative resident in the household of the owner or registrant of an uninsured motor vehicle* may recover such benefits paid * * * from the owner * * * of the uninsured motor vehicle." (Emphasis added.)

This subrogation provision contemplates the payment of benefits to persons based upon an *accidental bodily injury suffered by the spouse or relative* of an owner of an uninsured vehicle. The insurer paying such benefits is entitled to recover amounts paid from the owner of an uninsured vehicle or his estate in situations where the owner of the uninsured vehicle was primarily responsible for providing such benefits. The terms "spouse" and "relative resident" are used in § 3114(1) and do not necessarily indicate the same group of persons designated as surviving dependents under § 3110.

person whose uninsured vehicle is involved in the accident. As drafted, § 3113(b) excludes payment of benefits for survivors' loss in these situations as well.[34]

Accordingly, we hold that survivors' loss benefits may not be recovered where the claim is based upon the accidental bodily injury resulting in death suffered by an owner or registrant of a vehicle for which the requisite security was not in effect at the time of the accident where the uninsured vehicle is involved in the accident. The decisions of the Court of Appeals are therefore affirmed.

COLEMAN, C.J., and KAVANAGH, WILLIAMS, LEVIN, FITZGERALD, and RYAN, JJ., concurred with BLAIR MOODY, JR., J.

---

[34] The very narrow nature of the exclusion set forth in § 3113(b) is to be emphasized. The exclusion operates only where the uninsured vehicle is involved in the accident. Therefore, in situations where an owner of an uninsured vehicle is injured as either an occupant or non-occupant of a vehicle where his uninsured vehicle is not involved in the accident, the injured person or his survivors may claim benefits from an insurer designated in § 3114 or § 3115 or through an assigned claims plan.